**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

JOHN SCOTT,

                  Plaintiff,

-vs-                                            Case No.  2:05-cv-203-FtM-33SPC

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                  Defendant.

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Plaintiff John Scott's Motion for Judgment on the Record (Doc. # 27) filed on October 10, 2005, and the Defendant Hartford Life and Accident Insurance Company's Dispositive Motion for Summary Judgment and Accompanying Statement of Undisputed Material Facts and Memorandum of Law (Doc. # 28) filed on October 10, 2005.

**FACTS**

       Prior to seeking disability benefits, John Scott (Scott) was a Vice President and Investment Securities Officer with the Bank of the Keys in Key Largo, Florida. The major tasks of Scott's position with the Bank were mainly sedentary, such as using the computer and filling out forms. (AR. H-217-218). Scott stopped working after August 27, 2004, and shortly thereafter he applied to Hartford Life for short term disability (STD) benefits. (A.R. H-217-222).  Scott was a participant in an ERISA benefit plan (the Plan) funded by a group insurance policy (the Policy) issued by Hartford

Life. (AR. H-67-105.).  The Policy gave Hartford Life full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions. (AR. H-77).

Under the Policy, STD benefits were payable to a covered employee who became totally disabled, as defined in the Policy.  If Hartford Life determined that an employee's proof of total disability was satisfactory, the benefits would be paid weekly and would continue as long as the employee provided proof of continuing disability or until the expiration of the maximum duration of benefits. (AR. H-72, 76).

In July of 2004, Scott was admitted to the emergency room at Lee Memorial Health System with complaints of abdominal pain.  After receiving Dilaudid, the pain was relieved and Scott was released, however, the emergency room physicians concluded that Scott's "acute abdominal series showed dilated loops of bowel." (AR. H143).   Thereafter, on August 30, 2004, Scott completed an application for STD stating that his last day of work was August 27, 2004.  Again on August 31, 2004, Scott presented to the emergency room at Southwest Florida Regional Medical Center with complaints of abdominal pain.  (AR. H122, 142, 152-164).  Scott stated the pain comes on quickly with very little warning and can last two (2) to three (3) days.

A CT scan of Scott's abdomen revealed "no definitive acute abdominal pathology." (AR. H162).  A CT scan of his pelvic area revealed "no CT evidence of acute pelvic pathology." (AR. H163).  Scott's pain again resolved and he was discharged that day.  (AR. H122, 156).  Upon discharge Scott was given general instructions by the hospital staff, which included advising him that abdominal pain "can mean a serious problem requiring surgery (such as appendicitis), or an innocent problem which goes away on its own (such as a viral infection)." (AR. H152).       Included in his benefits application was an Attending Physician's Statement (APS) from  Jorge Guzman-Huesca,

M.D., who stated that Scott's diagnosis was "recurrent severe abdominal pain related to stress/anxiety," with subjective symptoms of severe and incapacitating abdominal pain. (AR. H222). Scott stated in his benefits application that he was unable to work due to anxiety, his "fear of [the] next attack," and extreme abdominal pain, accompanied by vomiting, at recurring intervals. (AR. H219). Scott also checked a box indicating that his condition was "related to [his] occupation." (AR. H219).

Because Scott had stated that his condition was related to his occupation, Hartford Life initially denied Scott's claim on September 21, 2004, pursuant to the Policy provision excluding coverage for conditions as to which workers compensation benefits were or could be payable. The Policy provided that no benefits were payable in connection with, among other things, a "sickness or injury for which workers' compensation benefits are paid, or may be paid, if duly claimed." (AR. H-74). Hartford advised Scott that his claim could receive further consideration upon his provision of statements from himself and his physician stating that his condition was not in fact work related. Hartford Life also advised Scott to supply it with updated medical evidence of his claimed disability. (AR. H107-108).

On October 5, 2004,  Dr. Guzman-Huesca submitted a letter on behalf of Scott stating that Scott had experienced recurring bouts of severe abdominal pain for the previous five years and that these attacks were not due to his job conditions. (AR. H206).  Dr. Guzman-Huesca stated that while the radiological studies did not show a physical basis for Scott's pain, his clinical assessment concluded that it was caused by adhesions (scar tissue) secondary to his previous radiation treatments for testicular cancer in 1979. (AR. H206). Dr. Guzman-Huesca further advised that the "severity as well as the unpredictability and frequency of the attacks have placed a psychological burden on Mr.

Scott, since he is concerned about not meeting his obligations at work for the time off he has had to take while sick." (AR. H206).  In a follow-up letter written by Scott on October 8, 2004, he stated that he had been "rendered incapable of carrying out my duties at work because of the severity of the attacks which cause me to have to go to bed at the very least and on many occasions to seek medical assistance to include trips to the emergency room." (AR. H208).

On October 28, 2004, Hartford notified Scott that his claim was denied for the following reasons:

> No testing or results provided and no demonstration of severity or frequency of condition that would render an inability to perform the essential functions of your regular job duties as a vice-president and investment securities officer.

> Your physician did not provide information regarding diagnostics performed, referrals, physical exam findings other than [your] reported complaints, no evidence of lab work, weight loss, stool specimens or medications to improve his condition.

(A.R. H-202).  Hartford then advised Scott of his right under ERISA to submit an administrative appeal of the adverse claim determination. (AR. H202).  It further advised him that his appeal should include information regarding the "complications, treatment, restrictions and limitations that prevent you from performing the essential functions of your regular job," and explained that the foregoing information was needed because "the information your physician submitted does not provide sufficient medical evidence of your being totally disabled." (AR. H202).

Records from North Collier Hospital reflected that Scott received in-patient treatment for anemia from January 17, 2005, to January 20, 2005. (AR. H122, 142, 165-192).  He was discharged on January 20, 2005, with a hospital physician reporting that Scott had "responded well to a blood transfusion" and was "stable for discharge." (AR. H165).  The records showed that on January 19,

2005, Scott advised Michael Marks, M.D. that although he had a history of abdominal pain, he had "had no pain recently." (A.R. H171).   Scott further advised Dr. Marks that his symptoms of "vomiting and abdominal pain" had "mostly resolved." (AR. H152).

In a letter dated March 15, 2005, Dr. Guzman-Huesca concluded that his "performance at work has been affected by his pathology in a psychosomatic fashion," such that Scott was "unable to fulfill his obligations at work to the highest of standards as he was used to." (AR. H194).

Scott appealed the claim denial on March 17, 2005, and submitted medical records for Hartford Life's review. (AR. H141-142).   On May 4, 2005, Hartford Life notified Scott of its final determination that STD benefits were not payable to him based on the medical records he had submitted. (AR. H115-119).   Hartford Life's notification letter stated, *inter alia*, the following reasons for the decision: (1) there was no evidence that Scott received any medical treatment during the period of time between August 31, 2004, and January 17, 2005, a period of four and a half months; (2) Scott was not having any abdominal pain as of January 17, 2005; (3) there was no medical evidence of any abdominal attacks at any time after August 31, 2004. (AR. H118).   Although Dr. Guzman-Huesca indicated that Scott was experiencing stress and anxiety, there was "no evidence that he was referred for Psychological evaluation or counseling," and no evidence that his "mental status was significantly impaired in the fall of 2004." (AR. H118).   Scott received no medical treatment from 9/3/04 until 1/17/05.

 Based on the foregoing, Hartford Life denied Scott's appeal.  Hartford Life then closed his file because Scott had exhausted his administrative remedies. (AR. H119).  Subsequently, pursuant to the Employment Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 *et seq.*, Scott filed the current lawsuit.

## ERISA STANDARD OF REVIEW

ERISA claims are subject to three standards of review. Yochum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541, 543 (11th Cir. 2000). A brief discussion of those standards is appropriate here. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 102, 109 S. Ct. 948, 103 L. Ed 2d 80 (1984), the U.S. Supreme Court held that ERISA claims should be reviewed *de novo* unless the plan's administrator was also in a position to deny a claim for the benefits. Brown v. Blue Cross Blue Shield of Alabama, Inc., 898 F.2d 1556, 1559 (11th Cir. 1990). In circumstances where the plan's administrator also has the discretion to deny the claim, the Court should review the plan administrators or fiduciary's decision under the "arbitrary and capricious" standard. Yochum, 234 F.3d at 544. "Finally, if the plan grants the fiduciary or administrator discretion, but the court finds a conflict of interest between the fiduciary or administrator and the company, a 'heighten arbitrary and capricious' standard applies." Id. If the Court finds such a conflict of interest, "the court will consider this conflict in its analysis."[1] Id. The Eleventh Circuit Court of Appeals has held when an

---

[1]     When considering a conflict of interest the Eleventh Circuit has held:

> The beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary. A conflicted fiduciary may favor, consciously or unconsciously its interest over the interest of the plan beneficiaries. The standard of review for a fiduciary operating under a conflict of interest remains arbitrary and capricious with a significantly diminished degree of deference. Although [e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries, the burden shifts to the fiduciary to prove that it's interpretation of plan provisions committed to its discretion was not tainted by self-interest. Adams v.Thiokol Corp., 231 F.3d 837, 842 (11th Cir. 2000) (citing Brown v. Blue Cross Blue Shield of Alabama, Inc., 898 F.2d 1556, 1568 (11th Cir. 1990)). If the fiduciary succeeds in proving this burden, the opposing party 'may still succeed if the action is arbitrary and capricious by other measures.'
> (continued...)

insurance company is the ERISA plan administrator and also responsible for paying claims that "a strong conflict of interest exists making application of the heightened arbitrary and capricious standard appropriate." Brown v. Bellsouth Telecommunications Inc., 73 F. Supp. 2d 1308, 1319 (M.D. Fla. 1999) (citing Brown v. Blue Cross Blue Shield of Alabama, 898 F.2d at 1562)).

Regardless of whether the regular or heightened arbitrary and capricious review applies, the Court must first review *de novo* the administrator's decision to determine whether the decision was right or wrong. Williams v Bellsouth Telecommuncations, Inc., 373 F.3d 1132, 1138 (11th Cir. 2005); HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001) (citing Godfrey v. Bell Telecommunications, Inc., 89 F.3d 755, 758 (11th Cir. 1996) (holding that a *de novo* review must first be held to decide if the administrator's determination was wrong)).  When assessing the correctness of the administrator's decision the Court's inquiry is limited to the administrative record known to the administrator when the decision to deny the benefits was made. Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). Only after the *de novo* review and the Court determines that the  administrator is wrong, does it then look for a conflict of interest.  HCA Health Servs. of Georgia, Inc., 240 F.3d at 993.

If the Court determines that the administrators decision was wrong, the Court must then decide whether the claimant has proposed a reasonable interpretation of the plan. Lee v. Blue Cross Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994).   Assuming the claimant's interpretation is reasonable, the Court then turns to whether or not the administrator's wrong interpretation of the plan is nonetheless reasonable. HCA Health Servs. of Georgia, 240 F.3d at 994.

---

[1](...continued)
          Adams, 231 F.3d at 842.

A plan administrator's wrong but reasonable interpretation of the plan is entitled to deference, even in light of the claimant's reasonable interpretation, unless the administrator suffers from a conflict of interest. Id.  The Plaintiff's reasonable interpretation does not trump the administrator's wrong interpretation. Id. The principles governing the administrator's decision are similar to the principles of trust law which state that the administrator's interpretation will not be disturbed if it is reasonable. Firestone Tire and Rubber Co., 489 U.S. at 110-111.

## DISCUSSION

The first step for the Court in an ERISA action is to conduct a *de novo* review of the administrative record to determine if the administrator's decision was right or wrong. Williams, 373 F.3d at 1138; HCA Health Servs. of Georgia, 240 F.3d at 993. The Court will review *de novo* Hartford's initial decision to deny Scott's STD benefits and then the Court will review *de novo* Hartford's denial of Scott's appeal to determine if the administrator's decisions were correct.  If after a *de novo* review of the administrative record, the Court determines that the administrator was wrong, the Court will review whether or not the arbitrary and capricious standard or the heighten arbitrary and capricious standard should be used. Williams, 373 F.3d at 1138.

Under the Plan, disability or totally disabled means that you are prevented by:

>  1. accidental bodily injury;
>  2. sickness;
>  3. Mental Illness;
>  4. Substance Abuse; or
>  5. pregnancy,
>  from performing the essential duties of your occupation, and as a
>  result, you are earning less than 20% of your pre-disability [w]eekly
>  [e]arnings.

(AR. H79).

In the instant action, the Plaintiff argues that the Defendant abused its discretion in denying

the Plaintiff STD.  He asserts that the decision of the Defendant was arbitrary and capricious because

the Plaintiff was denied benefits notwithstanding an undisputed medical record that established that

Scott could not perform the essential duties of his employment due to anxiety over when the next

episode of abdominal pain would occur.  An [e]ssential [d]uty is defined as:

> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> 3. can not be reasonably omitted or changed.
> To be at work for the number of hours in your regularly
> scheduled work week is also an [e]ssential [d]uty.

(AR. H30).

The Defendant responds that the medical record did not contain sufficient evidence to establish proof

of disability as required by the Plan and therefore, the denial was not wrong.

Under ERISA, the Plaintiff has the burden of proving his entitlement to contractual benefits.

Richards v. Hartford Life & Accidental Insurance Company, 153 Fed. Appx. 694, 696 (11th Cir.

2005).  Thus, the single issue before the Court is whether or not Scott's medical record was sufficient

enough for Hartford to determine if Scott's disability entitled him to benefits under the Plan.  In the

instant case, an individual covered by the terms of the Plan could establish disability if:

> while covered under the Benefit, [they] become totally disabled, and
> furnish proof to us that [they] remain totally disabled, we will pay the weekly
> benefit shown in the Schedule of Insurance . . . No benefits will be payable
> unless you are under the care of a Physician other than yourself or a member
> of your immediate family.

(AR. H72).  Therefore, it was incumbent upon Scott to provide the medical evidence of his disability.

On September 21, 2004, Hartford denied Scott's initial claim because the Policy excluded

coverage for conditions that could be paid by worker's compensation. (AR. H74).  In response to the

denial of his initial claim, Scott submitted a statement that his abdominal pain was not work related.

His treating physician Dr. Guzman-Huesca also sent a letter stating that Scott had suffered from abdominal pain for the last five (5) years and that these attacks were not due to his employment. (AR. H206, 208). On October 28, 2005, Hartford again denied the application for STD stating that Scott had failed to provide any documentation of the frequency of the attacks. (AR. H202). Hartford continued that Scott's treating physician, Dr. Guzman-Huesca failed to provide any medical information or evidence from diagnostics, tests, examinations, or medications that would establish proof of Scott's disability. (AR. H111, 202). As such, Hartford concluded that nothing in the file would preclude Scott from performing the essential duties of his employment as a vice president and investment securities officer in a bank. (AR. H111).

Case law states that it is reasonable for an administrator to require the Plaintiff to provide objective medical evidence of his condition even if the Plan does not require such proof. <u>Fick v Metropolitan Life Insurance Company</u>, 347 F. Supp. 2d 1271, 1286 (S.D. Fla. 2004). Thus, based upon the lack of objective medical evidence presented by Scott for review, Hartford's denial of STD benefits in October of 2004 was correct and reasonable.

In his appeal of the October 28, 2004, denial filed on March 17, 2005, the Plaintiff included the medical records from his emergency room visits in July 26, 2004, and August 31, 2004. He also submitted his records from his hospitalization for anemia in January of 2005, and a letter by Dr. Guzman-Huesca submitted on March 15, 2005, with additional clinical assessments of Scott's condition. Upon review, Hartford again denied the Plaintiff's request for STD benefits because of a lack of objective medical evidence.

The Plaintiff states that the denial is wrong because he provided substantial uncontested medical evidence proving his disability.  Proof of loss as defined by the Plan states as follows:

> Proof of Loss may include but is not limited to the following:
>
> 1. documentation of
>    a) the date your Disability begin;
>    b) the cause of your Disability;
>    c) the prognosis of your Disability;
>    d) your Earnings or income, including but not limited to copies of your filed and signed federal and state tax returns; and
>    e) any evidence that you are under the regular care of a physician;
> 2. any and all medical information including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations , and treatment notes.
> 3. the names and addresses of all:
>    a) physicians and practitioners of healing arts you have seen or consulted;
>    b) hospitals or other medical facilities in which you have been seen or treated; and
>    c) pharmacies that have filled your prescriptions within the past three years;
> 4. your signed authorization for us to obtain and release;
>    a) medical, employment and financial information; and
>    b) any other information we may reasonably require;
> 5. your signed statement identifying all other income benefits and;
> 6. proof that you and your dependents have applied for all other benefits which are available.  You will not be required to claim any retirement benefits which you may only get on a reduced basis.
> All proof submitted must be satisfactory to us.

(AR. H27).

The Defendant states that while the Plaintiff did provide some medical records, those records did not establish that the Plaintiff is disabled and therefore entitled to benefits.  According to the record, the Plaintiff missed work on July 26, 2004, August 31, 2004, and January 17-20, 2005. (AR. H122).  After August 31, 2004, Scott did not report any further episodes of pain. (AR. H122).  The x-rays from his emergency room visit in July of 2004, showed that he had dilated small bowel loops

which were suspicious for Ileus or early bowel obstruction, however, Scott refused to pursue the matter further by having a CT scan done at that time. (AR. H118).  The records show Scott was there for about two hours and then left with the pain relieved. (AR. H122).

The medical report from August 31, 2004, concludes that there is "no definitive acute abdominal pathology. . .no CT evidence of acute pelvic pathology." (AR. H163).  The Plaintiff was released after a few hours. (AR. H122, 156).  The final summary from the Plaintiff's hospital stay in January of 2005, states the test results for esophagogastroduodenoscopy, colonoscopy, and small bowel follow-through were negative. (AR. H165).  Furthermore, the January hospital stay was for anemia caused by unknown bleeding, however, the suspected cause was scarring from the 1979 cancer treatments.  The Plaintiff never stated that he was having abdominal pain in January 2005. (AR. H169-170).  In fact, the Plaintiff admits that he was not under a doctors care from the last attack in August up to the January hospitalization. (AR. 122).  During his hospitalization in January 2005, the Plaintiff consulted with Dr. Michael Marks, M.D. at North Collier Hospital in Naples. (AR. H171-176).  In his report, Dr. Marks noted

> [the Plaintiff] has had a long history of right-sided abdominal pain. He has had no pain recently. . . .  He did have an EGD and colonoscopy done five years ago because of vomiting and abdominal pain.  These symptoms have most recently resolved.

(AR. H171).

The Plaintiff states that his reason for not being able to return to work is based upon his anxiety regarding the potential of having another attack, not the actual attacks themselves. (AR. H219). This is supported by Dr. Guzman-Huesca, in his letter of March 15, 2005, in which he wrote, "the attacks have left Mr. Scott in a precarious situation where his performance at work has been affected by his pathology in a psychosomatic fashion, where either because of his physical ailment (pain,

vomiting, visits to physician's offices or emergency room, surgery and time off secondary to all the above) or because of the stress and anxiety generated by the nature of the problem and multiplied by the lack of a definitive resolution has rendered Mr. Scott unable to fulfill his obligations at work to the highest standards as he was used to." (AR. H194).

The Plaintiff, further argues that the pain is the result of radiation colotis arising from his cancer treatments in 1979. However, there is no medical evidence to establish that fact. Dr. Guzman-Huesca states that his diagnosis that scar tissue from the radiation therapy in 1979 is causing the pain is a clinic diagnosis that is not based upon actual test results. (AR. H194). He states that tests results would merely eliminate other causes but could not confirm his scar tissue adhesions diagnosis without actually inspecting the small intestine through a surgical procedure. (AR. H 194). The necessary procedure has not been performed. Thus, Scott failed to provide objective medical evidence establishing his disability as required by the Plan.

The Plaintiff further argues that Hartford's decision contradicts the plain language of the policy. The language of the policy clearly and unequivocally states that the Plaintiff must provide sufficient medical evidence of his disabling impairment. (AR. H24). The Plaintiff fails to provide that evidence, and thus his argument lacks merit.

In the instant case, the Court has determined that Hartford's decision as the Administrator of the Plan was correct. Scott went for a period of at least four and half months without medical treatment and all indications demonstrate that Scott did not have an attack from the August 31, 2005, through May 4, 2005, when Hartford denied his appeal. Even his own treating physician states that his current "disability" is psychosomatic. (AR. H194). He never states Scott is disabled physically because of the medical evidence or as a result of any specific diagnostic tests but instead

states that Scott cannot perform to the level he personally is used to performing. (AR. H194).  Scott presents no medical records of psychological treatment that would support disability on mental grounds other than the fact that he takes Xanex and Lexapro. (AR. H117-118).  There are no clinical studies or psychological diagnosis to support his claim.

In sum, Scott presented no medical documentation of his disability, as required by the terms of the Plan, other than his own subjective complaint.  Subjective complaints are not sufficient to establish disability. Hufford v Harris Corp., 322 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004) (relying on subjective complaints would require the administrator to pay virtually all claims); Fick, 347 F. Supp. 2d 1286-1287 (holding that "[i]n the absence of a requirement of objective evidence the review of claims for long-term disability benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question.").

Thus, based upon the record and the terms of the Plan, the Court finds that Hartford's decision denying STD benefits was not wrong.  If the Court determines that the administrator's decision was not wrong then the court affirms the decision and ends the inquiry. Williams, 373 F.3d at 1138. Therefore, it is respectfully recommended that the Defendant's Motion for Summary Judgment should be granted.

Accordingly, it is now

**RECOMMENDED:**

(1) The Plaintiff John Scott's Motion for Judgment on the  Record (Doc. # 27) should be **DENIED.**

(2) The Defendant Hartford Life and Accident Insurance Company's Dispositive Motion for Summary Judgment and Accompanying Statement of Undisputed Material Facts and Memorandum of Law (Doc. # 28) should be **GRANTED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this __13th__ day of February, 2006.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

-15-